| | |
|---|---|
| District Court, Arapahoe County, Colorado<br>7325 S. Potomac St.<br>Centennial, CO 80112 | DATE FILED: March 2, 2016 4:52 PM<br>FILING ID: DC1CF7B0FDB51<br>CASE NUMBER: 2016CV30521 |
| **Plaintiff:**<br><br>**TODD JOHNSON,**<br><br>v.<br><br>**Defendant:**<br><br>**LABS, INC., a Delaware corporation.** | ▲ COURT USE ONLY ▲ |
| Attorney:   Thomas J. Arckey, #14551<br>             J. Bennett Lebsack, #45206<br>             Arckey & Associates, LLC<br>             6465 Greenwood Plaza Blvd., Suite 250<br>             Centennial, CO  80111<br>Phone Number: 303-798-8546<br>FAX Number:   303-798-4637<br>Email:  tja@arlaw.us<br>        benl@arlaw.us | Case Number:<br><br>Division: |
| **COMMPLAINT AND JURY DEMAND** ||

**COMPLAINT AND JURY DEMAND**

The Plaintiff, Todd Johnson ("Plaintiff" or "Mr. Johnson"), by and through his attorneys, Arckey & Associates, LLC, and for his Complaint against Defendant LABS, Inc. ("Defendant" or "LABS"), alleges as follows:

## PARTIES

1.  Plaintiff, Mr. Johnson, is a resident of the State of Colorado.

2.  Defendant, LABS, is a Delaware corporation with its principal place of business being at 6933-B South Revere Parkway, Centennial, CO 80112.

3.  Mr. Johnson was employed by LABS as President and Chief Executive Officer from June 23, 2014 to July 16, 2015.

4.  LABS is a wholly owned subsidiary of AlloSource, an Illinois nonprofit corporation, with its principal place of business being at 6278 S. Troy Circle, Centennial, CO 80111.

1

**EXHIBIT A**

5.      Upon information and belief and pending discovery, AlloSource may be the alter ego of LABS as there exists a disregard of the corporate entity of LABS; there is commonality among the directors and officers; the formal legal requirements of LABS are not observed; the executives of LABS do not act independently in its interests but take direction from AlloSource; and costs and expenses of AlloSource are paid by LABS.

6.      Ms. Olivia Thompson is the President and Interim Chief Executive Officer and Board Chairperson of LABS.  Ms. Thompson is also the Vice President and Chief Financial Officer of AlloSource.  During Mr. Johnson's employment at LABS, Ms. Thompson was not an employee of LABS, but was employed by AlloSource.

## VENUE

7.      Venue is proper in Arapahoe County, Colorado, pursuant to Colorado Rules of Civil Procedure 98(c)(1) because substantially all of the actions or omissions alleged occurred, the Defendant's place of business is, and pursuant to C.R.C.P. 98(c)(5) the torts alleged were committed in Arapahoe County.

## ALLEGATIONS

8.      Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

9.      On June 10, 2014, Mr. Johnson and LABS signed an offer to commence employment on June 23, 2014.

10.     Mr. Johnson and LABS entered into an employment agreement titled Executive Severance Agreement ("ESA") effective June 30, 2014.

11.     Mr. Johnson's job responsibilities and titles included President, Chief Executive Officer ("CEO"), and LABS Board Director.

12.     On February 11, 2015, Thomas Cycyota, President, Chief Executive Officer and Board member for AlloSource, promised Mr. Johnson an annual salary increase of $50,000 retroactive to January 1, 2015.  This promise was made based upon Mr. Johnson's past performance, the market conditions for CEO responsibilities at similar company in the laboratory industry, and the value Mr. Johnson brought to LABS by adding new strategic business segments.

13.     On February 17, 2015 in a meeting between Ms. Thompson and Mr. Johnson, Ms. Thompson acknowledged she would make the $50,000 salary increase for Mr. Johnson retroactive to January 1, 2015 contingent on an independent market survey.

14.     LABS Chief Financial Officer began accruing the salary increase for Mr. Johnson.

15.     Ms. Thompson directed LABS Senior Human Resource ("HR") Director to contract with a compensation firm to determine a competitive salary for Mr. Johnson. The HR Director contacted Aon Hewitt. Aon Hewitt provided a report prior to Mr. Johnson's departure that indicated a substantially higher salary was competitive for Mr. Johnson's role and responsibilities.

16.     LABS failed to pay Mr. Johnson the promised increase in salary.

17.     On March 20, 2015, Ms. Thompson provided an annual performance assessment of Mr. Johnson. The assessment concluded with, "[i]n conclusion, we feel you have gotten off to a good start - clearly based on the scores from your management team they are thrilled to have you on-board…We continue to look forward to working with you going forward…Based upon your signing letter, the Board has determined you will receive a $50,000 bonus for revenue growth during the second half of 2014 and will contribute 10% of your base compensation to the deferred compensation plan."

18.     The bonus awarded by the Board for Mr. Johnson's 2014 performance was the maximum amount allowed per LABS CEO compensation.

19.     Throughout the spring of 2015, Mr. Johnson raised issues of improper corporate governance directly to Ms. Thompson and the LABS Board of Directors. The issues he raised included, but were not limited to, failure to comply with bylaws, failure to hold Board meetings, and misuse of corporate funds.

20.     Mr. Johnson raised issues to Board members that included: (a) payment to a Board member's company far in excess of services and products rendered to LABS; (b) improper accounting and tax practices, and (c) interferences by a parent company that pierced the corporate veil.

21.     On July 16, 2015, Mr. Johnson's employment with LABS was terminated without cause or notice.

22.     As a result of a termination without cause, the ESA entitled Mr. Johnson to a single lump payment equivalent to one-year's salary payable within 74 days.

23.     Specifically, the ESA provides in pertinent part:

>   b.     **Base Termination Pay**. On a termination of Executive's employment for any reason, Labs, Inc. shall pay Executive, in a single lump sum payment ***all wages earned through the Termination Date***, to include approved expenses incurred while employed and Paid Time Off ("PTO') payable per policy ("Base Termination Pay"), as of the date of Executive's separation from employment ("Termination Date"). (emphasis added.)

3

24. The terms of the ESA also provided that in the event of termination without cause, but as a condition to the payment of severance benefits, Mr. Johnson would be required to execute a full, complete and valid general release in a form as reasonably requested by LABS.

25. Upon Mr. Johnson's termination of employment, Ms. Thompson assumed the positions within LABS of President and Interim Chief Executive Officer.

26. On July 16, 2015, LABS tendered to Mr. Johnson a Confidential Separation Agreement, Waiver and Release ("Separation Agreement") which contained a general waiver and release of all claims, but also contained a specific release with language that Mr. Johnson was not entitled to and was not owed any other "wages, commissions, vacation pay, sick pay, bonuses, incentive pay, deferred compensation, expense reimbursement, severance pay, benefits or other compensation."

27. Prior to signing the Separation Agreement, Mr. Johnson made a written inquiry as to his $50,000 salary increase. Despite the clear language set forth in the March 20, 2015 performance appraisal, the promises provided by Mr. Cycyota and Ms. Thompson, and data supported by Aon Hewitt (an independent compensation firm), in a July 21, 2015 email, Ms. Thompson communicated to Mr. Johnson, "…the Board never approved a salary increase of 50K; nor was such an increase contemplated at any time. If you opt for the one-year severance option under the severance agreement, the amount of the severance benefit per the release agreement provided will stand."

28. On July 24, 2015, the Separation Agreement was notarized and signed by Mr. Johnson, and on July 28, 2015 was delivered to LABS via FedEx.

29. On July 29, 2015 via email, Ms. Thompson acknowledged receipt of the Separation Agreement signed by Mr. Johnson. Her acknowledgment was within the seven (7) day revocation period of paragraph V(C), which granted Mr. Johnson the right to revoke the Separation Agreement seven days from his signature.

30. On July 29, 2015, Ms. Thompson requested Mr. Johnson provide the company passwords to an Apple laptop computer provided to Mr. Johnson for his use during employment. Mr. Johnson promptly provided the password information to Ms. Thompson. The Apple laptop computer was left at LABS' offices in Mr. Johnson's office, as he was immediately escorted out of the premises when notified of his termination on July 16, 2015.

31. On August 3, 2015, Ms. Thompson informed Mr. Johnson that the LABS Apple computer did not have any data on the hard drive. Mr. Johnson stated he didn't understand why there was no data on the hard drive, but informed Ms. Thompson that all of the work that he performed would be contained in the Microsoft Outlook files and folders separately stored on a Microsoft Exchange server. Thereafter, Mr. Johnson cooperated with LABS, including working

with an IT professional, and personally appearing at an Apple computer store in attempts to restore the information.

32.     Subsequently, it was discovered that the laptop hard drive data was inadvertently deleted when the Apple ID for Mr. Johnson was disconnected from the laptop.

33.     Ms. Thompson, on behalf of LABS, executed the Separation Agreement on August 5, 2015.  At that time, she knew, and therefore LABS had knowledge, that the Apple laptop did not have any data on its hard drive.  At no time during the seven-day revocation period while it knew there was no data on the laptop did LABS inform Mr. Johnson that it would not pay him the severance benefit because of the missing data.

34.     LABS executed the Separation Agreement knowing that there was not any data on the laptop, and failing to disclose it would not pay Mr. Johnson the severance monies and with the intent to obtain a release and waiver of all rights and liabilities from Mr. Johnson.

35.     On August 18, 2015 LABS through correspondence by Ms. Thompson, communicated to Mr. Johnson that it had accepted and executed the Separation Agreement.  Ms. Thompson enclosed a fully executed copy of the Separation Agreement.  Her letter made no mention that LABS would not pay the severance benefit.

36.     On August 19, 2015 LABS through correspondence by Ms. Thompson, requested Mr. Johnson cooperate with LABS to assist in recovery of the data on the hard drive.  The data had been deleted as a result of the discontinuance of Mr. Johnson's Apple ID.  Mr. Johnson fully cooperated, including execution of releases and authorizations to Apple.

37.     On September 16, 2015, LABS through its legal counsel informed Mr. Johnson that, "Initially, we want to make it clear that LABS is not 'repudiating' the Confidential Separation Agreement, Waiver and Release ("Separation Agreement") executed by your client.  It appears, however, that Mr. Johnson breached the Separation Agreement."

38.     September 16, 2015 was the first time that LABS informed Mr. Johnson that "he is not entitled to the severance pay as set forth in the Separation Agreement.  Mr. Johnson's waiver and release and other obligations in that Agreement, however, remain fully enforceable …"

39.     LABS did not pay Mr. Johnson the severance benefit, nor any monies owed to Mr. Johnson.

40.     C.R.S. § 8-4-121 prohibits the waiver of Mr. Johnson's rights to his compensation, stating, "Any agreement, written or oral, by any employee purporting to waive or to modify such employee's rights in violation of this article shall be void."

41.     Mr. Johnson made a demand for $25,961.31 in wages owing on February 3, 2016.  On February 17, 2016, LABS paid $6,941.57.  The failure to pay all of Mr. Johnson's wages was willful.

## FIRST CLAIM FOR RELIEF
### Declaratory Judgment

42.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

43.     Mr. Johnson seeks declaratory relief on the validity of the Separation Agreement, pursuant to the Colorado Uniform Declaratory Judgments Law, C.R.S. §§ 13-51-101 *et seq.*, and C.R.C.P. 57 for the following reasons and any additional information obtained during discovery:

   a. The Separation Agreement was entered into by LABS based on fraud and deceit and it should be rescinded;
   b. The Separation Agreement is not supported by consideration as Mr. Johnson was already entitled to one year of base pay under the ESA because LABS terminated his employment without cause;
   c. Waiver of wages is not supported by valid consideration because LABS was already under contractual and statutory duties to pay the severance; and
   d. Pursuant to C.R.S. § 8-4-121, all provisions of the Separation Agreement waiving Mr. Johnson's right to wages are void.

44.     In requesting this declaratory relief, Mr. Johnson is requesting an interpretation of the rights, legal status and relationship of the parties under the above law and facts.  Specifically, Mr. Johnson requests the following relief:

   a. The Separation Agreement should be declared invalid based on failure of consideration, fraud and deceit and should be rescinded, placing the Mr. Johnson and LABS in status quo as of July 16, 2015, with all rights, claims and defenses;
   b. That paragraphs I(A) and (C) and III(A) are void pursuant to C.R.S. § 8-4-121 and that Mr. Johnson has all rights, claims and remedies available to him for his unpaid salary from January 1, 2015 through July 16, 2015 prorated at the $50,000 increase in salary; and
   c. Such other declaratory relief as the court law and equity deem appropriate.

## SECOND CLAIM FOR RELIEF
### Breach of Contract (ESA and Separation Agreement)

45.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

46.     Mr. Johnson performed his duties as President, Chief Executive Officer and LABS Board Director up to his termination date of July 16, 2015.

47.     Both parties signed the ESA with an effective date of June 30, 2014.  The ESA was a valid contract between Mr. Johnson and LABS, requiring LABS to pay Mr. Johnson one-year's salary as severance for a without cause termination.

48.     LABS breached the ESA by not paying the severance payment by September 28, 2015 as required by the ESA.  Defendant violated the covenant of good faith and fair dealing in express contracts.

49.     In addition, to the extent the court does not grant Mr. Johnson's request for declaratory relief rescinding the Separation Agreement, a valid contract existed between Mr. Johnson and LABS titled Confidential Separation Agreement, Waiver and Release ("Separation Agreement").  The Separation Agreement presented to Mr. Johnson on July 16, 2015 was subsequently signed by both Parties.

50.     LABS breached the Separation Agreement by not paying the severance payment by September 28, 2015.  Defendant violated the covenant of good faith and fair dealing in express contracts.

51.     As a result of the LABS's failure to compensate Mr. Johnson in accordance with the ESA and Separation Agreement, Mr. Johnson has been damaged and incurred loss of income.

### THIRD CLAIM FOR RELIEF
**False Representation**

52.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

53.     Prior to entering into the Separation Agreement, LABS knew that the Apple laptop computer hard drive contained no data.  After Mr. Johnson signed the Separation Agreement, LABS knew Mr. Johnson had seven (7) days ("revocation period") to revoke the Separation Agreement.

54.     At the time the Separation Agreement was executed by LABS, the promises and statements LABS made in the Separation Agreement, including its obligation that it would pay to Mr. Johnson severance in a lump sum payment, are representations of a past, present and/or future facts, LABS failed to inform Mr. Johnson that it intended to not pay the severance.  As of August 5, 2015, LABS knew Mr. Johnson had signed the Separation Agreement and Mr. Johnson was no longer in the revocation period under the Separation Agreement.

55.     These facts were material.  To the extent LABS's statement that it would pay Mr. Johnson the severance was a future representation, LABS possessed special knowledge that it failed to disclose to Plaintiff.

56. At the time the Separation Agreement was executed by LABS, it knew that it was not going to pay Mr. Johnson the severance or was aware that it would utilize the laptop data issue to justify the non-payment of severance.

57. LABS made the representations and entered into the Separation Agreement with the intent that Mr. Johnson would rely on the representations of the severance payment in exchange for a full waiver and release.

58. Mr. Johnson did rely on those representations and did enter into the Separation Agreement.

59. Mr. Johnson's reliance on the representations made by LABS of the payment of the severance monies was justified.

60. LABS failed to pay any of the severance and failed to even account for damages, if any, it incurred from the loss of data and in good faith deduct monies equal to its alleged damages.

61. As a result of Mr. Johnson's reliance on the representations that he would be paid the severance monies, he has now suffered damages and losses including the loss of the severance payment and wages.

62. Mr. Johnson seeks rescission of the Separation Agreement, placing the parties in status quo as of July 16, 2015.

## FOURTH CLAIM FOR RELIEF
### Fraudulent Nondisclosure or Concealment

63. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

64. Prior to entering into the Separation Agreement, LABS knew that the Apple laptop computer hard drive contained no data.

65. At the time LABS executed the Separation Agreement it knew that it was not going to pay Mr. Johnson the severance and use the Apple laptop hard drive missing information as the reason to deny the severance payment.

66. LABS was also aware that the Separation Agreement contained a seven day right of revocation and that during this revocation period Mr. Johnson had a right to revoke the Separation Agreement. Prior to the execution of the Separation Agreement by LABS and during the seven-day revocation period, LABS concealed and failed to disclose with the intent of creating a false impression of the actual facts in Plaintiff's mind that it would pay Mr. Johnson the severance.

67. LABS' concealment and failure to disclose this information constituted material facts.

68. LABS had a duty to disclose these facts as they were the essence of the transaction and were required by LABS in equity or good conscience to disclose.

69. LABS concealed and failed to disclose these facts with the intent that Mr. Johnson would not exercise his right to revocation during the seven-day period, thus permitting the general release provisions of the Separation Agreement to bind Mr. Johnson and prevent him from seeking valuable employment rights in enforcing monetary interest arising out of the employment relationship.

70. In reliance, Mr. Johnson entered into the Separation Agreement and did not undertake to revoke the Separation Agreement on the facts and promises that LABS would pay the severance benefit.

71. Mr. Johnson's reliance upon the acts and statements of LABS was justified.

72. Mr. Johnson has suffered damages and losses as a result of his reliance on the actions, words, and conduct of LABS. Mr. Johnson seeks rescission of the Separation Agreement, placing the parties in status quo as of July 16, 2015.

## **FIFTH CLAIM FOR RELIEF**
### **Colorado Wage Claim Act, C.R.S. § 8-4-101** *et seq***.**

73. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

74. LABS owes Mr. Johnson wages for the promised salary increase retroactive to January 1, 2015. The monies are earned, vested and determinable.

75. After demand for payment, LABS has failed to pay Mr. Johnson the wages owed.

76. LABS failed to pay all wages in response to Mr. Johnson's demand within fourteen (14) days of the date of such demand.

77. LABS's failure to pay earned, vested, and determinable wages to Mr. Johnson caused Mr. Johnson damages.

78. LABS's violation of the Wage Claim Act was willful pursuant to C.R.S. § 8-4-109(3)(c).

79. LABS's failure to pay Mr. Johnson all of his wages within fourteen days of the demand for payment entitles him to penalties as set forth in C.R.S. § 8-4-109, including, but not limited to costs of litigation and reasonable and necessary attorneys' fees pursuant to C.R.S. § 8-4-110(1).

## SIXTH CLAIM FOR RELIEF
### Implied Contract on Theory of Quantum Meruit

80. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

81. Mr. Johnson performed services for LABS as President and Chief Executive Officer.

82. Mr. Johnson conferred a benefit upon LABS from work Mr. Johnson performed as President and Chief Executive Officer, including but not limited to, positive year-over-year revenue growth and improved quality control.

83. LABS accepted the services and received a benefit from services performed by Mr. Johnson under circumstances that it reasonably should have known that Mr. Johnson expected to be paid the reasonable value of his services.

84. Mr. Johnson is entitled to the reasonable value of his services while employed at LABS and it is unequitable for the benefits he bestowed upon LABS to be retained without payment to Mr. Johnson of its value. Otherwise, LABS is unjustly enriched and should disgorge the reasonable value of all benefits it retained.

## SEVENTH CLAIM FOR RELIEF
### Promissory Estoppel

85. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

86. LABS made promises, statements and acts regarding the amount of wages that Mr. Johnson would be paid. LABS provided instructions and directions which reasonably induced Mr. Johnson to accept and continue employment with LABS.

87. Mr. Johnson reasonably relied on the promises, statements and acts made by LABS in accepting employment with LABS.

88. LABS failed to pay Mr. Johnson the wages that were promised to him.

89. As a result of the breach of LABS's promises, Mr. Johnson has been damaged and incurred losses.

90. Injustice can be avoided only by enforcement of the promises made by LABS to Mr. Johnson and LABS should be estopped from denying such promises to Mr. Johnson and such promises should be enforced against LABS.

91. Mr. Johnson is entitled to enforcement of the promises.

**WHEREFORE**, Mr. Johnson request the court hold an evidentiary hearing at the conclusion of discovery and: (1) declare the Separation Agreement invalid and place the Parties in their legal status as of July 16, 2015, with all attendant rights, duties, obligations, claims and defenses; (2) permit this matter to be tried to a jury, and (3) Plaintiff requests judgment in his favor and against the Defendant as follows:

a.) A judgment in favor of the Mr. Johnson and against LABS for the contractual amount stipulated in the ESA of one years' salary, or alternatively, for the contractual amount stipulated in the Separation Agreement of one years 'salary;

b.) For wages for unpaid salary and penalties pursuant to the Colorado Wage Claim Act;

c.) For pre-judgment interest which has accrued since the date of the contract breach, September 28, 2015, pursuant to C.R.S. § 5-12-102;

d.) For attorneys' fees pursuant to the written agreement(s) and as provided by statute;

e.) For all costs in the prosecution of this matter; and

f.) For any and all further relief as the Court may deem proper and just.

**PLAINTIFF REQUESTS A JURY TRIAL ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 2nd day of March, 2016.

        ARCKEY & ASSOCIATES, LLC

        *s/ Thomas J. Arckey*
        Thomas J. Arckey, #14551
        *s/ J. Bennett Lebsack*
        J. Bennett Lebsack, #45206
        6465 Greenwood Plaza Blvd., Suite 250
        Centennial, CO  80111
        303-798-8546

<u>Address of Plaintiff</u>:
Todd Johnson
8207 Raphael Lane
Littleton, CO 80125